Good morning. We have four argued cases. The first of these is number 15-5102, Park Properties Associates v. United States. Mr. Gentile. Thank you, Your Honor, and may it please this Honorable Court, Thomas Gentile of Wilson-Elsa, for the appellants. The appellant's position is straightforward. The Court of Federal Claims erred in not granting legal fees to these plaintiffs under the Equal Access to Justice Act. I was surprised in reading both sides' briefs not to see any discussion really about the reasonableness of the government's position on the central issues in this case. There's a lot of discussion about what other Court of Federal Claims judges did and argued the government didn't appeal some of those decisions, but there's just no discussion of the merits of the government's positions that it took and whether those positions were reasonable or not. Well, it's a very interesting situation, Your Honor, because the positions that the government took are not reflected, we believe, in the opinion of the Court of Federal Claims below. The opinion of the Court of Federal Claims asserts various reasons why they think legal fees should not be granted under the Substantial Justification Standard, and we argue in our brief as to the reasons as to why the Court of Federal Claims was wrong on that. Yes, but you don't argue about the reasonableness of the government's position with respect to the statutory requirement about the comparability studies of the 1%. There's no discussion of whether that was reasonable or unreasonable. We believe that the primary position that needs to be addressed here is the conduct of the underlying agency in this case, that HUD took unreasonable positions when it did not follow the previous order of this court, and that that is what merits awarding of attorney's fees here. Can I ask you, you filed an EJIM motion, right, and then the government opposed. In the government's opposition, did it set forth an explanation why, even though it had lost on the contract issue, its position was reasonable? Well, respectfully, I'd leave that to the government to... I don't believe they did, Your Honor. Okay. The inquiry is to... But you haven't raised that issue. You haven't argued that the government failed to argue that, and I think you're correct. I've read their opposition before the Court of Federal Claims, but you haven't argued that on appeal. There's nothing in your briefs about that. Well, Your Honor, as we've stated, the position of our clients is that the primary issue here is the conduct of the government in abrogating these contracts, the conduct of HUD in failing to follow the previous orders of this court, the conduct of the government in dragging out this litigation. We believe that those are the bases of awarding attorney's fees here. Okay. Thank you, Your Honor. There was no justification for the government's conduct. It certainly wasn't a substantial one. The 1994 amendments gutted the automatic increases set forth in the Housing Assistance Program contracts, and when the Court of Federal Claims ruled that these 1994 amendments constituted a breach, HUD basically ignored that ruling. What we have to emphasize here is that the conduct of the government and HUD towards these plaintiffs affected not only these plaintiffs but numerous thousands of other Section 8 housing owners. Only these plaintiffs had the fortitude to endure the seemingly endless litigation against the United States Justice Department to see that justice was in fact done. If the government's defense of the breach of contract claim was itself reasonable, then nothing else you say matters, right? I'm sorry. Can you say that again, Your Honor? If the government, though having lost the breach of contract issue, was asserting a defense that was reasonable though wrong, then nothing else you say matters. It is a necessary condition for you to get fees that the government's position not be substantially justified. That's correct. The standard is substantial justification. Can you explain, even though it's not in the briefs on either side, which I do find remarkable, why the government's defense, conceitedly wrong, was actually unreasonable? It was unreasonable, Your Honor, because the underlying conduct was unreasonable, and that's the position of these plaintiffs in these appellants, that there was no justification for what HUD and the government did in abrogating these contracts. So that there was no reasonable basis for the government to have said, for example, based on the overall limitation provision, the 1994 legislation wasn't actually a breach. But the court did find that it was a breach, Your Honor. You can continue. Thank you, Your Honor. The court claims cited an issue that it believes the plaintiffs did not prevail on. It's not the standard in the statute that the plaintiffs must prevail on every issue. The standard in the statute is that they must be the prevailing party. And the only issue that they point to on which the plaintiffs did not prevail was a procedural issue about whether the plaintiffs needed to bring renewal rent claims in that then existing lawsuit or bring them into a new lawsuit. So that is not an issue on which the plaintiffs did not prevail. Plaintiffs, in fact, did bring it in another lawsuit. And Judge Lawrence Smith of the Court of Federal Claims has granted summary judgment on that claim, and proceedings are going forth now as to damages. And if Your Honors have no further questions, I'll defer to my adversary. Thank you. Mr. Totter, is that how you pronounce it? Totter. Thank you, and may it please the Court. With respect to whether the government gave papers as to the reasonableness of its position in the underlying litigation we did in the Court of Federal Claims in our opposition to the motion. I did not see that in there. It is at docket 168. I've read the document. Filed March 16, 2015. That paper seems to be somewhat similar to your brief here, which also doesn't address the reasonableness of the government's position on the two key issues. And with respect to that, Your Honor, on the core question of whether the 1994 statute breached the HAP contracts, the Court of Federal Claims decision here relied upon the earlier decision of the court in Cuyahoga. The Cuyahoga case states explicitly that this is a knotty question, described it as tenebrous, which is an obscure word meaning obscure, because it involves the application of the unmistakability doctrine, the sovereign acts doctrine. Well, why don't you argue in your brief that the government's position on the key issues was reasonable? On the comparability studies and on the 1%. You don't argue that. We don't talk about that in the brief. We respond to the arguments that were put forth when we were discussing the trial court's opinion on EJA, which doesn't discuss those issues explicitly one by one. I'm prepared to do so now if the court would prefer. With respect to Cuyahoga. Can you, please? Yes. With respect to Cuyahoga, the issue of whether the statute of Congress breached the contracts, there is an issue of whether sovereign immunity prohibited that under the unmistakability doctrine. Cuyahoga said this is a very difficult question, involved interpretation of the Winstar opinion, which had three different opinions, none of which was a total majority. Acknowledged it was a very difficult issue. The future decisions of the Court of Federal Claims, even though they came out against this, all were relying upon Cuyahoga, which conceded that that's a very difficult issue. Under the standard for substantial justification, which is whether there's a reasonable basis in law and fact, whether reasonable minds can differ, the fact that the seminal case, which stemmed all these other cases, said that this is a very hard issue. There had been no appellate court decision going further than that, is enough to justify the position that the government was substantially justified in continuing to litigate the position, which was acknowledged to be a very difficult question by the seminal decision by the same judge who decided the Egid decision here. The Egid decision doesn't go through all those steps one by one, but in part perhaps that's because the court was relying upon the earlier decision that acknowledged it was a hard question. So the 1%, this judge had come out the other way originally, right? Yes. There's also a dispute among the Court of Federal Claims with respect to some of the other subsidiary issues. For example, there was an issue whether this 1% deduction would apply. There was also an issue whether the statute abrogated the overall limitation clause in the HAP contracts. The overall limitation clause pre-existed the 1994 statute. It said HUD had the option to come up with market data to show there's a material difference and limit rent increases. The issue was whether it was that statute. HUD was no longer able to do that after the 1994 statute had changed the procedure for the rent increases. Could HUD still go on its own? There was a dispute in the lower courts. There was a case called Statesman 2. I believe it was from Judge Leto. And then there was a difference of opinion between that opinion and this court's opinion. And ultimately this court came out the other way. But again, the fact that there is a dispute among the Court of Federal Claims with respect to one of the questions, which was found to be a breach, supports the finding that the government's position was substantially justified. Also, with respect to the overall limitation clause, as we cite in our papers, the First Circuit in the one in Ken Valley case had actually come out the other way from the way the Federal Circuit appears to have done in the Haddon Housing Associates case, although the First Circuit distinguished Haddon in a footnote. Because the First Circuit ruled that the overall limitation clause apparently still could be applied, which would be a different outcome from what appears to have been the outcome in Haddon with respect to that question. But not by putting the burden on the landlord to come up with a comparability study. Right. And the question on the overall limitation clause is whether HUD could do it itself after the 1994 statute, whether HUD still preserved the options it had under the original contract for HUD to affirmatively come up with the market data, or whether the 1994 statute, because it had put the onus on the property owner, that means HUD couldn't do it itself anymore. That clause was just simply written out of the contract. In these cases, the government was trying to come in with comparability studies, which supported its position on the rents? That seemed to be what happened in one in Ken. That was a state housing authority in Maine. No, no, I mean in the Court of Federal Plans. In these cases, I don't know, it may have been the case in states and I'm not sure, but the issue that was dealt with by the Court in this case was whether the provision that eliminated the, that put the onus on the owner to come up with a rent comparability study, whether that meant that HUD couldn't still do it itself. I don't believe that HUD tried to do it itself in this one. It's just whether that provision was completely written out of the contract. But again, the fact that there's tension, the fact that two different circuits have come with positions that are in tension with one another, again, gives basis that the government's position was substantially justified, that there is a legitimate basis for dispute on that question, which is a separate but downstream question from whether the 1994 statutes affected a breach. Yeah, but I think the government is going to get itself into trouble if it doesn't bother to address the reasonableness of its position before the Court of Federal Claims and this Court in these cases. I mean, that's an essential ingredient of the substantially justified question. And you just can't ignore that. Yes, Your Honor. And to the extent that we were simply responding to the arguments that were put by plaintiffs in defending the decision of the trial court, that was why we weren't going point by point on this. But, you know, I'm here to provide any clarification that the Court needs on any of these questions. I also want to address... I think you may have answered this, but there is a lot of detail that is new as of this morning to me. There were, as Judge Allegra said, several different judicial decisions in the area. You've mentioned, I think, additional ones. Which ones precisely and on what issues bore on the issues that were in this case as opposed to other aspects of HAP contract litigation? The Haddon Housing Associates' decision of this court defined that the 1994 statutes were a breach of the underlying contracts. So that was the basis for the court's decision saying that the decisional law was unsettled in this circuit. Therefore, the government's position had a substantial basis in law in fact prior to that decision. And can I say, I mean, that seems to me like an incorrect proposition of law that just because a court of appeals hasn't ruled on a position, it is therefore substantially justified. And we're not saying that that's always the case. We're saying in a case like this, where you're dealing with the application of a statute, where the court that is issuing the same-age opinion had, in this seminal opinion, said that this is a very difficult question that involves application of the unmistakability doctrine, which is very difficult based upon the Winstar Supreme Court decision, which doesn't have even a majority. This was acknowledged to be a very difficult question. And in that context, the fact that there had been no court of appeals decision makes it reasonable to conclude that the government's position was substantially justified, even though we lost, given that this was acknowledged to be a difficult question from the outset and no one had resolved it beyond that. We're not saying in every case there has to be a court of appeals decision for the law to be, for a possible, for our position not to be substantially justified. But in a case like this, where it's acknowledged to be a difficult question, the fact that it had not been litigated and given guidance by the court of appeals does support the finding that our position was substantially justified. I also want to address a point that opposing counsel made with respect to footnote six of the court's each opinion, where the court had said, apart from the substantial justification provision of the statute, additionally, the court notes that the plaintiffs did not prevail on all issues. And this would also be an additional reason not to grant attorney's fees. First, we want to note that that states by its terms that it's dicta and not the basis for the decision, because it says it's totally apart from the substantial justification standard under the statute. We disagree with the court that that would be a correct statement of the law, that the plaintiffs did not prevail on every issue would be sufficient reason. They are a prevailing party. We do not contest that they are a prevailing party. What we will say is the fact that we did prevail on some issues, which includes the statute of limitations issue, which includes foreseeability on their lost profits claims for the renewal contracts, that does, again, give additional support to the conclusion that our position was substantially justified. If one could imagine a case where plaintiffs brought 100 issues and the government prevails on 99 of the 100 issues, the plaintiffs could be a prevailing party under EJA. They got judicially sanctioned relief, but if the government won on 99 out of 100 issues, that would be relevant to a consideration of whether the government's position was substantially justified in the whole. That's not exactly the point that the court was making in footnote six, but I would say that the fact that we did prevail on some issues is, again, With that, if the court has no further questions, we respectfully request that the court affirm the decision of the Court of Federal Claims denying plaintiffs EJA claim. Thank you. Mr. Gentile. Thank you, Your Honor. Just a few quick points of rebuttal. With regard to what my adversary said about a hypothetical in which 100 issues were brought, the court must understand that an attorney has an ethical obligation to his client to assert every issue. We cannot put an attorney representing a client in a position in which he is carefully picking and choosing only the best possible arguments to advance out of a fear that losing other arguments, on which he may have a chance but not the best chance, might impact his ability to get attorney's fees. That would be a very, very dangerous situation for this court. Second, with regard to the issue of there having been no governing appellate case, there's no standard like that in the Equal Access to Justice statute. There's nothing in the statute that says that there must be an appellate case on point, and as we have argued in our briefs, it was the government that tactically did not appeal many of these cases so that there would not be an appellate case on point, so that plaintiffs, Section 8 housing owners, would be in a position where they faced tremendous uphill battle and tremendous legal fees, which they couldn't sustain, especially under the pressure of the reduced rents, which had much of the Section 8 housing owners throughout the country on the brink of foreclosure and bankruptcy. Finally, the decision of the Court of Federal Claims in this case did not address many of the issues which your honors believe are the most important, specifically the underlying arguments of the government as to the reasonableness of their positions below. But you didn't argue that to the Court of Federal Claims either, right? And that's why I suggest respectfully to this Court, your honor, that perhaps the correct proceeding might be for this case to be remanded to the Court of Federal Claims for that to be argued. And with that, I rest, your honor. Okay, thank you. Thank you, your honor. Thanks both counsel, the case is submitted. Thank you.